Bodford v. N.C. Dep't of Revenue, 2013 NCBC 19.

STATE OF NORTH CAROLINA        IN THE GENERAL COURT OF JUSTICE
                                          SUPERIOR COURT DIVISION
COUNTY OF WAKE                              11 CVS 607

ALVIN M. BODFORD and BRENDA S.  )
BODFORD,                            )
             Petitioners       )
                              )
         v.                     )
                              )
NORTH CAROLINA DEPARTMENT     )
OF REVENUE,                    )
             Respondent      )


STATE OF NORTH CAROLINA        IN THE GENERAL COURT OF JUSTICE
                                          SUPERIOR COURT DIVISION
COUNTY OF WAKE                              11 CVS 464

JASON M. BODFORD and MELISSA S.  )
BODFORD,                            )
             Petitioners       )
                                )
         v.                     )
                              )
NORTH CAROLINA DEPARTMENT     )
OF REVENUE,                    )
             Respondent      )


STATE OF NORTH CAROLINA        IN THE GENERAL COURT OF JUSTICE
                                          SUPERIOR COURT DIVISION
COUNTY OF WAKE                              11 CVS 608

JASON M. BODFORD,              )
             Petitioner        )
                              )
         v.                     )
                              )
NORTH CAROLINA DEPARTMENT     )
OF REVENUE,                    )
             Respondent      )

STATE OF NORTH CAROLINA          IN THE GENERAL COURT OF JUSTICE
                                                          SUPERIOR COURT DIVISION
COUNTY OF WAKE                                          11 CVS 466


RANDALL L. POTEAT and AMY B. POTEAT,)
                      Petitioners                    )
                                                     )
              v.                                     )
                                                     )
NORTH CAROLINA DEPARTMENT                             )
OF REVENUE,                                           )
                      Respondent                     )


**OPINION AND ORDER ON PETITION**
**FOR JUDICIAL REVIEW OF FINAL AGENCY DECISION**
**IN A CONTESTED TAX CASE**

THIS MATTER comes before the court on Petition for Judicial Review of a Final

Agency Decision ("Petition") in a contested tax case arising under N.C. Gen. Stat. §

105-241.16 (hereinafter, all references to the North Carolina General Statutes will be to

"G.S."), filed by Petitioners Alvin and Brenda Bodford, Jason and Melissa Bodford and

Randall and Amy Poteat, pursuant to Article IV of the North Carolina Administrative

Procedure Act ("NCAPA"); and

THE COURT, having considering the Petition, briefs and arguments of counsel

and other appropriate matters of record, AFFIRMS the Final Agency Decision, as

discussed below.

> *Brooks, Pierce, McLendon, Humphrey & Leonard, LLP, by Howard L. Williams, Esq. and Benjamin R. Norman, Esq. for Petitioners.*

> *Attorney General Roy Cooper, Esq. by Assistant Attorney General Tenisha S. Jacobs, Esq. for Respondent.*

Jolly, Judge.

I.

PROCEDURAL HISTORY

[1]     Respondent North Carolina Department of Revenue ("Respondent")

issued Notices of Final Determination on October 12, 2009, disallowing Petitioners'

claims on their individual North Carolina income tax returns for certain tax deductions

for depreciation that previously was added back[1] by Epes Carriers, Inc. ("ECI"), or its

wholly-owned subsidiaries, and by Epes Logistics Services, Inc. ("ELS").  Petitioners

are shareholders in ECI and ELS.[2]

[2]     On December 8, 2009, Petitioners timely filed a Petition for Contested

Case Hearing, pursuant to G.S. 105-241.15 and 150B-23(a),[3] challenging the Notices of

Final Determination that disallowed the deductions.[4]

[3]     On February 16, 2010, the assigned Administrative Law Judge ("ALJ")

ordered the contested cases to be consolidated.[5]

[4]     On June 25, 2010, Respondent filed a Motion for Summary Judgment

("Motion for Summary Judgment").[6]

[5]     On July 1, 2010, the parties jointly filed agreed-upon factual stipulations.[7]

[6]     On July 8, 2010, the ALJ heard oral arguments from Respondent and

Petitioners on the Motion for Summary Judgment.[8]

---

[1] The phrase "added back," as used in this Opinion and Order, means that the taxpayer added any depreciation amounts deducted on their federal tax returns back to their state tax returns in calculating taxable state income.  The process and reasons for "adding back" depreciation amounts is more fully explained in paragraphs 13-16.

[2] Pet'rs Br. Supp. Pets. Judicial Review ("Petitioners Memo") 5.  As discussed *infra*, at times material, ECI and ELS converted from C corporation status to S corporation status.  Consequently, Petitioners contend they personally are entitled to the depreciation deduction at issue.

[3] All statutory references are to those in effect for the relevant tax years at issue in this matter, 2005-2007.

[4] Petitioners Memo 5.

[5] *Id.*

[6] *Id.*

[7] *Id.*

[7]     On August 5, 2010, the ALJ issued a recommended decision denying the Motion for Summary Judgment and concluding that the deductions claimed by Petitioners under G.S. 105-134.6(b)(17) were proper ("ALJ Decision").[9]

[8]     On December 15, 2010, Respondent issued its Final Agency Decision ("Final Agency Decision"), which rejected the ALJ Decision and determined that Petitioners were not entitled to the depreciation deductions taken by Petitioners on their individual North Carolina tax returns for tax years 2005, 2006 and 2007.[10]

[9]     On January 12, 2011, Petitioners filed their Petition, seeking reversal of the Final Agency Decision.

[10]    The Petition has been fully briefed and argued and is ripe for determination.

II.

FACTUAL BACKGROUND

[11]    The primary place of business for ECI and ELS is in Greensboro, North Carolina.

[12]    In 2002, the federal government enacted a provision allowing a taxpayer to take a bonus deduction by accelerating depreciation on new equipment ("Bonus Deduction") purchased and placed in service by businesses in tax years 2002, 2003 and 2004.[11]

[13]    For tax years 2002, 2003 and 2004, ECI and ELS, as C corporations, purchased certain new equipment.  They accelerated the depreciation on the equipment

---

[8] *Id.*
[9] *Id.* 5-6.
[10] Pet'rs Reply Br. Supp. Pets. Judicial Review ("Petitioner Reply Memo") 2.
[11] *Id.* 2.

for federal tax purposes and used the Bonus Deduction on their federal tax returns.[12] Because they were not entitled to the Bonus Deduction for state tax purposes, in determining their state taxable income, ECI and ELS added back the amount of the Bonus Deduction to their corporate North Carolina tax returns.[13] After doing that, ECI and ELS were entitled to deduct the amount added back as depreciation over the next five taxable years. Both entities did so for tax years 2002, 2003 and 2004.[14]

[14] However, before ECI and ELS could use the entire balance of their five-year, added-back depreciation deduction, they each converted from C corporations to S corporations.[15] As a result, a balance of the deduction remained unused.

[15] After ECI and ELS converted to S status, for tax years 2005, 2006 and 2007, Petitioners, as shareholders of ECI and ELS, claimed on their individual state tax returns the balance of the add-back depreciation deduction to which ECI and ELS were entitled at the time each converted to C status.[16] Respondent disallowed Petitioners' use of the remaining balance of added-back depreciation as a deduction on their individual tax returns.[17]

[16] Petitioners have paid the contended tax, and seek a declaration from this court that they were entitled to the balance of the unused add-back depreciation as a deduction.

---

[12] *Id.* 4.
[13] *Id.*
[14] *Id.*
[15] *Id.* 2.
[16] Specifically, Alvin M. Bodford and Brenda S. Bodford claimed the deduction in tax years 2005-2007. Jason M. Bodford claimed the deduction in tax years 2005-2006. Jason M. Bodford and Melissa S. Bodford claimed the deduction in tax year 2007. Randall L. Poteat and Amy B. Bodford claimed the deduction in tax years 2005-2007. Petitioners Memo 5 n.4.
[17] Resp't Resp. Pet'rs Br. Supp. Pets. Judicial Review ("Respondent Memo") 4.

III.

STANDARD OF REVIEW

[17]    When a "trial court exercises judicial review of an agency's final decision, it acts in the capacity of an appellate court." *N.C. Dep't of Env't & Natural Res. v. Carroll*, 358 N.C. 649, 662 (2004) (citing *Mann Media, Inc. v. Randolph Cnty. Planning Bd.*, 356 N.C. 1, 12 (2002)).  "The administrative body making the initial ruling determines the weight and sufficiency of the evidence and the credibility of the witnesses, draws inferences from the facts, and appraises conflicting and circumstantial evidence." *Technocom Bus. Sys. Inc. v. N.C. Dep't of Revenue*, 2011 NCBC 1, ¶ 26 (N.C. Super. Ct. Jan. 4, 2011) (citing *State ex rel. Comm'r of Ins. v. N.C. Rate Bureau*, 300 N.C. 381, 406 (1980)).  After an ALJ issues a decision, the applicable agency reviews the official record and makes a Final Agency Decision.  G.S. 150B-36(b).[18] When a court reviews the Final Agency Decision, the appropriate standard of review is determined by the nature of the alleged error.  *Hillard v. N.C. Dep't of Correction*, 173 N.C. App. 594, 596 (2005).  When the party "contends legal error in the agency's decision, the trial court must review *de novo*." *Id.*

[18]    As it applies to this matter, G.S. 150B-51(c) provides that

> In reviewing a final decision in a contested case in which an administrative law judge made a decision, in accordance with [G.S] 150B-34(a), and the agency does not adopt the administrative law judge's decision, the court shall review the official record, *de novo*, and shall make findings of fact and conclusions of law.  In reviewing the case, the court shall not give deference to any prior decision

---

[18] In 2011, the General Assembly enacted Session Law 2011-398, s. 20 and 2011-398, s. 27 in 2011, which repealed G.S. 150B-36 in its entirety and amended G.S. 150B-51(c).  These revisions to the NCAPA, which are not retroactive, were effective for contested cases filed on or after January 1, 2012.  This contested case, commenced on December 8, 2009, is unaffected by the revisions.  Accordingly, the court will apply the statutory language as written when this case commenced.

made in the case and shall not be bound by the findings of fact or the conclusions of law contained in the agency's final decision.

[19]  In this case, Petitioners contend Respondent erred in rejecting the ALJ's Conclusions of Law Numbers 2, 3 and 4.[19]

[20]  In reviewing a decision *de novo*, the court "considers the matter anew and freely substitutes its own judgment for the agency's judgment." *Mann Media*, 356 N.C. at 13.  Under the NCAPA, "[t]he court shall determine whether the petitioner is entitled to the relief sought in the petition, based upon its review of the official record."  G.S. 150B-51(c).

[21]  The court concludes that the standard of review in this matter is *de novo*.

IV.

DISCUSSION

A.

Statutory Setting

[22]  When calculating taxable income for a North Carolina taxpayer, the starting point is the taxpayer's federal taxable income under the Internal Revenue Code. G.S. 105-134.5(a) ("North Carolina taxable income means the taxpayer's taxable income as determined under the [Internal Revenue] Code, as adjusted [herein].").  Therefore, due to this interrelationship between federal and state tax laws, any deduction taken by the taxpayer when calculating federal taxable income will affect the taxpayer's state taxable income, unless an adjustment is made to income at the state

---

[19] The Petition and appeal to this court is limited to Respondent's objections to these conclusions of law. The findings of fact contained in the Final Decision are unchallenged and are based upon the parties' jointly filed set of Stipulations setting forth the agreed upon facts, filed on July 1, 2010.  Moreover, the parties have conceded that the material facts are not in dispute.  Respondent Memo 4; Petitioner Reply Memo 2.  Accordingly, this court's review is limited to the conclusions of law made by Respondent.

level. In fact, in the context of the issues raised by this case, North Carolina has elected to eliminate the interrelationship between federal and state tax laws so as not to allow a taxpayer to take the Bonus Deduction as a one-time accelerated deduction for state tax purposes. To do so, North Carolina enacted G.S. 105-134.6(c)(8) and 105-134.6(b)(17).[20] G.S. 105-134.6(c)(8) requires a taxpayer to add back to taxable income any Bonus Deduction taken for federal tax purposes. However, G.S. 105-134.6(b)(17) does permit the taxpayer to deduct twenty percent of the amount previously added back under G.S. 105-134.6(c)(8) in each year for five years.[21]

[23] The pivotal question raised here is (a) whether Petitioners are entitled to a deduction on their state individual tax returns for previously-untaken, add-back depreciation, pursuant to G.S. 105-134.6(b)(17), when (b) the added-back depreciation amounts were added back by a C corporation that (c) subsequently converted to an S corporation, of which Petitioners are shareholders, before the C corporation had taken all of its five-years of add-back deduction. Given the unique set of circumstances involved, it is not surprising that this Petition presents a question of first impression for this court.

[24] Petitioners contend that the statute at issue, G.S. 105-134.6(b)(17) is ambiguous.[22] As such, Petitioners urge the court to interpret the statute in a manner allowing them to take the remaining balance of the add-back deduction on their

---

[20] The cited statutes are taken from the Individual Income Tax Act. When the General Assembly enacted G.S. 105-134.6(b)(17) and G.S. 134.6(c)(8), it also enacted new tax provisions that apply to corporations, which are found in the Corporation Income Tax Act. The corporate tax equivalents to G.S. 105-134.6(b)(17) and G.S. 105-134.6(c)(8) are G.S. 105-130.5(b)(21) and G.S. 105-130.5(a)(15), respectively. Because Petitioners are individuals, the court will refer to tax provisions from the Individual Income Tax Act, unless otherwise inapplicable.

[21] Effectively, by enacting G.S. 105-134.6(b)(17) and 105-134.6(c)(8), North Carolina spread out over a five-year period the bonus depreciation deduction allowed at the federal level. The deduction set out in G.S. 105-134.6(b)(17) is referred to by both parties in their memoranda as the "add-back deduction."

[22] Petitioners Memo 3.

individual tax returns.[23]  Furthermore, Petitioners contend that Respondent's interpretation of the statute creates an unjust result that is unconstitutional in that it creates a distinction among taxpayers that unreasonably precludes Petitioners from benefitting from the deduction.[24]

[25]    Respondent contends to the contrary, arguing that the statute is unambiguous and that its plain language supports disallowing the add-back deduction as taken by Petitioners.[25]  Additionally, Respondent contends that Petitioners cannot meet their burden of proving that the statutory provision in question is unconstitutional.[26]

B.

Statutory Construction

[26]    This Petition involves issues of statutory interpretation, which are questions of law.  *Parkdale Am., LLC v. Hinton*, 200 N.C. App. 275, 278 (2009).  The primary goal of statutory interpretation is to "'ascertain the intent of the legislature and to carry out such intention to the fullest extent.'"  *Id.* (quoting *Brown v. Flowe*, 349 N.C. 520, 523 (1998)).  An important factor to be considered in determining legislative intent is the words chosen by the legislature.  *Id.*  The first step in interpreting such statutory language is to ascertain whether the chosen language is clear and unambiguous, and if so, the court should apply the plain meaning of the words.  *Id.*  However, if ambiguities exist or the meaning of the statute is unclear, the court then must attempt to interpret the statute to give effect to the legislative intent.  *Union v. Branch Banking & Trust Co.*, 176 N.C. App. 711, 717 (2006) (citing *Burgess v. Your House of Raleigh, Inc.*, 326 N.C.

---

[23] *Id.* 8-10.
[24] *Id.* 3.
[25] Respondent Memo 2.
[26] *Id.* 3.

205 (1990)).  It is presumed that the legislature intended to give undefined words within a statute their ordinary meaning determined according to the context in which those words ordinarily are used.  *Parkdale*, 200 N.C. App. at 278.  Nevertheless, where giving effect to the plain meaning of the language of a statute will lead to absurd results, or will contravene the purpose of the legislature, the reason and purpose of the law shall control.  *Union*, 176 N.C. App. at 717.

[27]    Furthermore, there are unique canons of statutory construction that apply when interpreting taxation statutes.  "Deductions . . . are in the nature of exemptions: they are privileges, not rights, and are allowed as a matter of legislative grace."  *Aronov v. Sec'y of Revenue*, 323 N.C. 132, 140 (1988) (citing *Ward v. Clayton*, 5 N.C. App. 53 (1969)).  The court is to construe strictly any statute providing for a deduction and resolve ambiguities in favor of taxation.  *Id*.  Simply put, when interpreting a tax statute, "[t]axation is the rule; exemption the exception."  *Id.* (quoting *Broadwell Realty Corp. v. Coble*, 291 N.C. 608, 611 (1977)) (internal quotations omitted).  Here, Petitioners seek to avail themselves of a deduction from taxation.  In doing so, Petitioners must overcome a statutory construction that weighs heavily in favor of taxation.  Accordingly, Petitioners must clearly meet all statutory requirements to take the deduction at issue here, which is provided for in G.S. 105-134.6(b)(17).

C.

The Statute

[28]    In order to determine whether Petitioners meet the statutory guidelines to take the deduction at issue, the court must look to the statute and its language.  The

statute at issue, G.S. 105-134.6(b)(17),[27] provides that a deduction shall be taken from taxable income:

> In each of the taxpayer's first five taxable years beginning on or after January 1, 2005, an amount equal to twenty percent (20%) of the amount added to taxable income in a previous year as accelerated depreciation under subdivision (c)(8) of this section.

[29]    The statutory language of G.S. 105-134.6(b)(17), which defines the parameters of the add-back depreciation deduction, is clear and unambiguous. Therefore, the court will interpret the statute by applying the plain and definite meaning to the words chosen by the General Assembly.  Also, because the statute provides for a deduction, the court is to strictly construe the statute in favor of taxation.

[30]    Following and applying the above rules of statutory construction, it appears to the court that the plain language of G.S. 105-134.6(b)(17) clearly and unambiguously conditions a taxpayer's eligibility to use the add-back deduction upon that taxpayer previously having added back accelerated depreciation to taxable income.

[31]    Strictly construed, the language of the statute expressly requires the taxpayer to have added back to taxable income previously accelerated depreciation under G.S. 105-134.6(c)(8) in order to be able to deduct such amount from taxable income as permitted by G.S. 105-134.6(b)(17).  Further, even for those taxpayers who are eligible to take the add-back deduction, the statute allows only a twenty percent deduction of the total amount added back under subdivision (c)(8) for the given tax year.[28]

---

[27] The subdivisions of G.S. 105-134.6(b) set out all deductions that a taxpayer shall make in calculating North Carolina taxable income.

[28] The part of G.S. 105-134.6(b)(17) limiting the deduction to twenty percent of previously added-back accelerated depreciation does not appear to be disputed by the parties.

[32]    The undisputed facts show that from 2005 through 2007, Petitioners claimed add-back deductions for accelerated depreciation on their North Carolina individual income tax returns.[29]  However, Petitioners made no additions under G.S. 105-134.6(c)(8) to their taxable income in previous years for the add-back deductions claimed.[30]  The amounts representing accelerated depreciation were added back to their state returns by ECI and ELS when both entities were C corporations, but were not added back by Petitioners.

[33]    Once ECI and ELS converted from C corporations to S corporations, Petitioners, as shareholders of these entities, must accept the tax consequences that result from the conversion.[31]  One such consequence is that Petitioners cannot take a deduction pursuant to G.S. 105-314.6(b)(17) on their individual state tax returns without having added back acceleration depreciation amounts to individual income under G.S. 105-134.6(c)(8).  Any remaining add-back accelerated depreciation deduction amount belonged to ECI and ELS.  The existence of such balance at the time of conversion does not entitle Petitioners to take the add-back deduction.

---

[29] Petitioners and Respondent filed Stipulations on July 1, 2010, in connection with this contested case. Those stipulations clearly state that Petitioners never made additions to taxable income for accelerated depreciation.  *See* Official R. Contested Cases 947, 949, 952-54 and 957-58 (setting out the stipulations).

[30] Petitioners argue that they should be able to take the deduction under the stipulated facts because they would be able to take the deduction had the corporate entities, ECI and ELS, converted from an S corporation to a C corporation. Petitioners argue that permitting the deduction when the corporate entity converts from an S corporation to a C corporation, but denying the deduction under the current set of facts, leads to an unjust and absurd result. However, Petitioners' hypothetical is not analogous and the court does not find this argument persuasive. Under Petitioners' hypothetical situation (i.e., conversion from a S corporation to a C corporation), the taxpayer that would have added back the accelerated depreciation amounts to their tax returns pursuant to G.S. 105-134.6(c)(8) would have been the individual shareholders of the S corporation. In that case, the individual shareholders of the former S corporation should be able to take the add-back deduction. However, under the actual set of facts before the court, Petitioners never added back any bonus depreciation to their state tax returns and are not eligible to take the deduction.

[31] The court notes that conversion from a C corporation to an S corporation is not a tax-neutral event. "[W]hile a taxpayer is free to organize his affairs as he chooses, nevertheless, once having done so, he must accept the tax consequences of his choice, whether contemplated or not . . . ." *Comm'r v. Nat'l Alfalfa Dehydrating & Milling Co.*, 417 U.S. 134, 149 (1974) (citing *Higgins v. Smith*, 308 U.S. 473, 477 (1940)).

[34]    Accordingly, the court CONCLUDES that Petitioners are not entitled to deduct accelerated depreciation amounts from their taxable income.  As to this issue, the Final Agency Decision should be AFFIRMED.

D.

Constitutionality

[35]    Petitioners contend that Respondent's interpretation of the statute at issue is unconstitutional because it violates Article V, Section 2 of the North Carolina Constitution, requiring taxes to be imposed in a just, uniform and equitable manner.[32] Specifically, Petitioners argue that Respondent is discriminating against taxpayers who are individual shareholders of an S corporation that was a C corporation when the accelerated depreciation was added back to taxable income.[33]  Petitioners contend that Respondent's interpretation treats them differently from other shareholder of S corporations.[34]

[36]    Respondent contends that the statute, as interpreted and applied, is constitutional given that all shareholders of an S corporation that converted from a C corporation are treated the same as Petitioners on this issue.[35]  Respondent further contends that Petitioners cannot meet their burden to demonstrate that the statute is unconstitutional, and as such, Petitioners' argument on this point should be rejected.[36]

[37]    When a party challenges a statute on constitutional grounds, the "statute must be upheld unless its unconstitutionality clearly, positively, and unmistakably appears beyond a reasonable doubt . . . ." *Guilford Cnty. Bd. of Educ. v. Guilford Cnty.*

---

[32] Petitioners Memo 12.
[33] *Id.* 12-13.
[34] *Id.*
[35] *Id.* 13-14.
[36] Respondent Memo 12.

*Bd. of Elections*, 110 N.C. App. 506, 511 (1993) (citing *Baker v. Martin*, 330 N.C. 331, 334 (1991)). The party challenging the constitutionality of a statute bears the burden of proof and must indicate "the particular provision of the Constitution which [the party] claim[s] the act violated." *Id.* at 511 (citing *Rice v. Rigsby*, 259 N.C. 506 (1963)). The laws enacted by the General Assembly are entitled to the presumption that they are constitutional, and courts resolve doubt in favor of constitutionality. *Guilford Cnty.*, 110 N.C. App. at 511 (citing *Moore v. Knightdale Bd. of Elections*, 331 N.C. 1, 4 (1992)). Where a statute may have both a constitutional and unconstitutional interpretation, the courts should adopt the constitutional interpretation. *Id.*

[38]    It is important to note that the General Assembly is afforded "wide latitude" in its "selection of subjects for taxation . . . ." *Leonard v. Maxwell*, 216 N.C. 89, 94 (1939). The two principle rules the General Assembly must abide by when classifying subjects for taxation are that "the classification itself must be based upon a reasonable distinction . . . [and] the tax must apply equally to all those within the class defined." *Deadwood, Inc. v. N.C. Dep't of Revenue*, 356 N.C. 407, 411 (2002) (quoting *Snyder v. Maxwell*, 217 N.C. 617, 619 (1940)). A taxation statute may still be constitutional even when different classes of taxpayers are treated differently, so long as the taxpayers within each defined class are treated equally. *Leonard*, 216 N.C. at 94 (recognizing that "[d]iscrimination may exist among the classes.").

[39]    To assess the constitutionality of G.S. 105-134.6(b)(17), as interpreted and applied by Respondent, the court must analyze the reasonableness of the classifications of each class and the application of the tax within the class.

[40]     Here, Respondent has interpreted and applied G.S. 105-134.6(b)(17) based upon a classification of taxpayers who added back accelerated depreciation to their taxable income in a previous year, as required by G.S. 105-134.6(c)(8).  The basis for this classification is to allow the taxpayer to deduct the same amount of depreciation at the state level as is deducted at the federal level but spread out over a five-year period.  It is reasonable to classify taxpayers in this manner.[37]  Accordingly, because the classification is based on a reasonable distinction, the statute satisfies the first prong of the constitutionality test.

[41]     The court also is persuaded that G.S. 105-134.6(b)(17) is applied evenly and uniformly within the classification, thereby satisfying the second prong to establish the statute's constitutionality.  Taxpayers who can show that they added back accelerated depreciation are entitled to take the deduction, whereas those taxpayers who have not added back accelerated depreciation are not entitled to take the deduction.  In this regard, the statute is applied evenly and uniformly.  Accordingly, Petitioners have failed to show that there is discrimination within the class.

[42]     Because Petitioners have not met their burden of showing that the classification in this case is not based upon a reasonable distinction and that all taxpayers within that classification are not treated the same, the court CONCLUDES that the statute, as interpreted and applied by Respondent, is constitutional.  As to this issue, the Final Agency Decision of the Department of Revenue should be AFFIRMED.

---

[37] Put another way, it is not unreasonable to deny a deduction to a taxpayer if the taxpayer has not made required additions to taxable income, especially when the deduction is provided as a means for the taxpayer to recoup the amounts added back.

IV.

<u>CONCLUSION</u>

NOW THEREFORE, based upon the foregoing, it hereby is ORDERED that the

Final Agency Decision of the Department of Revenue is AFFIRMED.

This the 10th day of April, 2013.